BUILDERS CONCRETE, INC., Appellant,

v.

BREMERTON CONCRETE PRODUCTS COMPANY, Appellee.

Appeal No. 84–1292.

United States Court of Appeals, Federal Circuit.

March 4, 1985.

■■■■■■■■■■

Edward W. Bulchis, Seed & Berry, Seattle, Wash., argued for appellant. With him on brief were William O. Ferron, Jr. and Donald S. Chisum, Seattle, Wash.

Michael Bocianowski, Christensen, O'Connor, Johnson & Kindness, of Seattle, Wash., argued for appellee. With him on brief was James W. Anable, Seattle, Wash.

Before DAVIS, BENNETT and NEWMAN, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

The decision of the United States District Court for the Western District of Washington, granting summary judgment of non-infringement in favor of appellee Bremerton Concrete Products Company, is *affirmed.*

## OPINION

Appellant Builders Concrete, Inc. is the assignee of U.S. Patent No. 4,353,320, inventor Wesley W. Sluys, for a marine float made of a concrete casing surrounding a buoyant core, the concrete deck of the float accommodating utility lines, the inner structure being braced with ribs in which tie rods are embedded to load the concrete casing compressionally and to prevent weakening or cracking of the float. The utility lines are housed in a longitudinal trench which carries the main lines, and in a transverse "passage" which carries utilities to outlets at the side of the deck. It is this "passage" which is the focus of the issue on appeal.

The proceedings before the district court were based on various cross-motions for summary judgment, all of which were denied or mooted except for Bremerton's motion for summary judgment that the Sluys patent was not infringed. Builders Concrete appeals from this award, and also from the denial of its own motion for summary judgment of infringement.

Although the patent issued with several claims, patent claim 10 (application claim 11) is the sole claim in suit:

10. A marine float comprising:

a buoyant core generally having the shape of a rectangular prismatoid;

a concrete casing surrounding said core, said casing having a bottom, a pair of spaced-apart end walls, a pair of spaced-apart side walls extending longitudinally between corresponding sides of said end walls and a deck connecting the upper edges of said end walls and said side walls, said deck having formed therein an elongated utility trench extending longitudinally between said end walls, and a plurality of spaced-apart, generally parallel ribs extending transversely between said side walls, said ribs projecting downwardly from said deck beneath said trench such that the lower portions of said ribs extend continuously from one side wall to the other;

an elongated wale extending along the upper edge of each side wall;

transversely positioned, respective tie rods extending transversely across said casing beneath said trench, with the ends of the said tie rods projecting through the side walls of said casing and said wales, all of said tie rods being embedded in respective ribs so that said ribs brace the side walls of said casing against the tensional forces of said tie rods;

respective fastener means mounted on said ends of said tie rods for tensioning said tie rods, thereby securing said wales to said side walls and compresionally loading said casing; and

a passage extending between said utility trench and an opening formed in the upper surface of said deck adjacent one of said side walls for routing utility conduits to a utility outlet mounted on said deck adjacent the opening on the upper surface thereof.

Bremerton admitted that its accused float contains every feature of claim 10 except the utility passage of the final

clause. The Bremerton utility passage extends transversely from the longitudinal utility trench through the interior of the float and opens through the side wall of the float below the wales, and the utility outlet is mounted not on the concrete deck of the float but on a metal floor plate that connects the float to an adjacent float; as illustrated in a sketch of record on behalf of Bremerton, with descriptive labels added:

## Literal Infringement

The district court held that summary judgment was appropriate on the cross-motions relating to literal infringement because there was no dispute as to the construction of either the patented device or the accused device. Although Builders Concrete now challenges the correctness of this basis for summary judgment, we find no error therein. No genuine issue as to any material fact requiring resolution at trial remained on the question of literal infringement. *Chore-Time Equipment, Inc. v. Cumberland,* 713 F.2d 774, 778–79, 218 USPQ 673, 675 (Fed.Cir.1983).

■ Literal infringement requires that the accused device embody every element of the claim. *Fay v. Cordesman,* 109 U.S. 408, 420–21, 3 S.Ct. 236, 244–43, 27 L.Ed. 979 (1883); *Interdent Corp. v. United States,* 531 F.2d 547, 552, 199 USPQ 191 (Ct.Cl.1976), *adopting* 187 USPQ 523, 526 (Ct.Cl.Tr.Div.1975). This does not require a slavish conformity to words of insignificance, and Builders Concrete argues that literal infringement is found when one views the accused structure as a whole. The transverse utility passage of the Bremerton float runs beneath the deck and opens to the side of the float. Builders Concrete argues that the words in the last clause of claim 10 "between said utility trench and ... the upper surface of said deck" can mean "part way between" as well as "all the way between". They also argue that the adjacent floor piece that receives the outlet of the Bremerton utilities is encompassed by the literal meaning of the word "deck".

■ The district court declined to adopt these proposed constructions of claim 10, and held that the passage of claim 10 did not literally encompass the Bremerton utility passage. We discern no error in this conclusion.

## Infringement by Equivalents

The transition may be gradual between literal infringement by substantially identical structures and infringement by equivalent structures. If the requirements of literal infringement are not met, one determines whether the structures are equivalent. In considering whether the Bremerton float is equivalent to that described in claim 10, the district court applied the classical standard of whether the utility passage of the Bremerton float "performs substantially the same function in substantially the same way to obtain the same result". *Graver Tank Co. v. Linde Air Products Co.,* 339 U.S. 605, 610, 70 S.Ct. 854, 857, 94 L.Ed. 1097, 85 USPQ 328, 330 (1950).

Bremerton argued that its routing of utilities through the side wall at a point near the waterline is the same as prior art structures, which expose the utility lines to weathering and corrosion in their routing to an outlet in a connected structure that is not part of the claimed float. Builders Concrete presented affidavit and deposition testimony to the effect that the Sluys invention is not limited to any specific routing of the transverse utility passage from the utility trench to the utility outlet, and that the location of the outlet is immaterial. Builders Concrete's position is that the substance of its invention, which is described in the other provisions of claim 10, is not affected by the location of the utility outlet or passage, and that Bremerton's less efficient design of this non-critical aspect of claim 10 does not diminish the equivalence of the structures.

The district court found that the Bremerton method of routing the utility passage from the utility trench to the side wall of the float was known in the prior art. The court found that Bremerton's side-opening utility passage performs the same function to achieve the same result as the Sluys utility passage defined in claim 10, but not in substantially the same way, and that the structures are not equivalent. Builders Concrete has challenged the correctness of summary judgment on this point, in view of the several affidavits and depositions to the

contrary on this question of material fact. Builders Concrete argues that the rules governing the grant of summary judgment require not only that there be no genuine issue as to any material fact but that all inferences be drawn favorably to the non-movant; that equivalence is a question of fact; and that the district court could not have drawn the required inferences in favor of Builders Concrete in view of the court's factual conclusion. There is merit to this position, for Builders Concrete's affidavit and deposition testimony presented credible evidence in support of equivalence. In this context we turn to the district court's alternative holding, that "[e]ven were this Court to conclude that defendant's float is equivalent ... the doctrine of file wrapper estoppel would preclude a finding of infringement." Since this conclusion is correct as a matter of law, it becomes unnecessary to decide whether summary judgment was properly granted on the ground of non-equivalence.

## Prosecution History (File Wrapper) Estoppel

This doctrine is an equitable tool for determining the permissible scope of patent claims. As we said in *Caterpillar Tractor Co. v. Berco, S.p.A.,* 714 F.2d 1110, 1115, 219 USPQ 185, 187 (Fed.Cir. 1983), "[t]he interplay between the doctrines of equivalents and estoppel governs determination of infringement ... and is in turn governed by the prosecution history...." Material representations made to the PTO in response to references cited by the PTO, with the result that the scope of patent claims is changed in order to obtain the patent grant, are pertinent to the subsequent determination of the permissible scope of the patent claims. As this court said in *Thomas & Betts Corp. v. Litton Systems, Inc.,* 720 F.2d 1572, 1579, 220 USPQ 1, 6 (Fed.Cir.1983):

[P]rosecution history estoppel, which precludes a patentee from obtaining a claim construction that would resurrect subject matter surrendered during prosecution of his patent application ... limits a pat-

entee's reliance on the doctrine of equivalents. . . .

Builders Concrete argues that "file wrapper estoppel cannot arise without an amendment", citing *Keystone Driller Co. v. Northwest Engineering Corp.*, 294 U.S. 42, 55 S.Ct. 262, 79 L.Ed. 747 (1935), and *Schenck v. Nortron Corp.*, 713 F.2d 782, 786, 218 USPQ 698, 701 (Fed.Cir.1983). The "passage" clause of claim 10 was not amended during prosecution, and the prosecution history reflects no criticism by the examiner of the scope or words of this clause. Builders Concrete therefore argues that this clause of this claim is not subject to restraint in its interpretation to cover equivalent structures, merely because some other claim or clause not in litigation may have been limited in prosecution. This position must be evaluated in the context of this specific case.

■ The Sluys patent application was filed with thirteen claims, of which application claims 1 and 2 as filed are pertinent to this analysis:

1 (as filed). A marine float, comprising a concrete casing surrounding a buoyant core, said casing having a bottom, two opposed end walls, two opposed side walls connecting opposite edges of said end walls and a generally planar deck extending between the upper edges of said end and side walls, said deck having formed therein an elongated utility trench having a bottom connecting the lower edges of two trench walls, said trench extending between said end walls to facilitate the routing of utility conduits along said floats, said casing further including a plurality of spaced apart, generally parallel tie rods extending between said side walls beneath the bottom of said trench and respective fasteners secured to the ends of said tie rods to tension said tie rods thereby forcing the side walls of said casing toward each other to compressively load said casing.

2 (as filed). The marine float of claim 1, further including a second utility trench extending generally perpendicularly to the other utility trench between said side walls to facilitate the routing of utility conduits to utility outlets mounted adjacent the side walls of the casing.

Several prior art references were cited by the Examiner, and before responding a personal interview was held. The PTO record states that the Examiner agreed on the basis of the interview that "claim 2 limited to transverse passages opening upwardly at side of deck appears allowable" and "claim 11 [now patent claim 10] appears allowable as is." The same understanding was stated by applicant Sluys, that "claim 1 is being amended to incorporate all of the limitations of claim 2 and to add the limitation that the transverse passages open upwardly at the side of the deck":

1 (as amended). A marine float, comprising a concrete casing surrounding a buoyant core, said casing having a bottom, two opposed end walls, two opposed side walls connecting opposite edges of said end walls and a generally planar deck extending between the upper edges of said end and side walls, said deck having formed therein [an elongated] *a longitudinal* utility trench having a bottom connecting the lower edges of two trench walls, said trench extending between said end walls to facilitate the routing of utility conduits along said float, *said deck also having formed therein a transverse utility passage extending generally perpendicularly from said longitudinal utility trench and opening upwardly in said deck adjacent one side thereof to facilitate the routing of utility conduits to utility outlets mounted adjacent the side walls of the casing,* said casing further including a plurality of spaced-apart, generally parallel tie rods extending between said side walls beneath the bottom of said trench, and respective fasteners secured to the ends of said tie rods to tension said tie rods, thereby forcing the side walls of said casing toward each other to compressively load said casing. [Emphasis in original to show additions to text, brackets show deletions.]

Thus application claim 1 was amended to include the passage limitations of application claims 2 and 11, and was allowed in that form. The amendment was made in view of the prior art; applicant Sluys wrote to the PTO: "During the interview, claims 1, 2 and 11 were discussed in relation to all of the cited references. After the differences between Applicant's invention and the cited references were pointed out, the Examiners agreed that claim 2 appears allowable if limited to transverse passages opening upwardly at the side of the deck. The Examiners also agreed that claim 11 appears allowable in its present form." (Further prosecution of application claim 11 resulted in amendments to parts of that claim which are not material here.)

The district court concluded that the prosecution history estopped Builders Concrete from interpreting application claim 11 (patent claim 10) to encompass that which was relinquished in the successful argument for patentability of amended claim 1. Although claim 10 is the only claim in suit, the prosecution history of all claims is not insulated from review in connection with determining the fair scope of claim 10. To hold otherwise would be to exalt form over substance and distort the logic of this jurisprudence, which serves as an effective and useful guide to the understanding of patent claims. The fact that the "passage" clause of patent claim 10 was not itself amended during prosecution does not mean that it can be extended by the doctrine of equivalents to cover the precise subject matter that was relinquished in order to obtain allowance of claim 1. It is clear from the prosecution history that the allowance of claim 1, the broadest claim with respect to the other elements of the float, depended on the amendment narrowing its "passage" definition to that of claim 10.[1]

We affirm the district court's holding that Builders Concrete is estopped by its prosecution history from asserting equiva-

lence between the Bremerton structure and claim 10, and that claim 10 is not infringed.

AFFIRMED.

---

1. The record and briefs contain frequent references to a pending reissue of the Sluys patent. This opinion pertains only to the issue before us.