**LOGOPAINT a/s, Plaintiff,**

v.

**3D SPORT SIGNS SI, et al., Defendants.**

**Case No. 1:16–cv–20764–UU**

United States District Court, S.D. Florida.

Signed 11/22/2016

Filed 11/23/2016

---

Eric H. Weisblatt, Osvaldo Alejandro Farres, Hunton & Williams, LLP, Scott A. Felder, Wileyh Rein, LLP, Washington, DC, Frederick A. Tecce, Panitch Schwarze Belisario & Nadel, LLP, Philadelphia, PA, Maya M. Eckstein, Paul T. Nyffeler, Hunton & Williams LLP, Richmond, VA, Jennifer Olmedo–Rodriguez, Matthew James Feeley, Richard Allen Morgan, Buchanan Ingersoll, Miami, FL, for Plaintiff.

Angela Teresa Puentes-Leon, Morgan Lowery Swing, Jorge A. Perez Santiago, Carlton Fields Jorden Burt, P.A., Miami, FL, Ethan Horwitz, Carlton Fields Jorden Burt, PA, New York, NY, Tracy Zurzolo Quinn, Reed Smith, LLP, Philadelphia, PA, for Defendants.

## ORDER

Ursula Ungaro, UNITED STATES DISTRICT JUDGE

THIS CAUSE is before the Court upon Defendants' Motion for Summary Judgment (D.E. 124) and Carsten Charmig's Motion for Summary Judgment (D.E. 126).

THE COURT has reviewed the Motions, the pertinent portions of the record and is otherwise fully advised of the premises.

## BACKGROUND

The following facts are undisputed unless otherwise noted.

### 1. The '475 Patent

This is a patent infringement action concerning U.S. Patent No. 8,261,475 ("the '475 Patent"), entitled "Figurative Print On A Plane Print Carrier And Use of Such Figurative Print," and owned by Plaintiff, Logopaint A/S ("Plaintiff"). D.E. 1 ¶ 24. The '475 Patent was issued on September 11, 2012. D.E. 1 ¶ 21, Ex. A. The '475 Patent involves an invention, also known as "3D CamCarpets," where Plaintiff creates physical "carpets" that are laid down adjacent to the goal in a soccer match and appear on television as a three-dimensional advertisement. *Id.*

The patent-in-suit sets forth 10 claims. D.E. 1 ¶ 22–23. Plaintiff alleges that Defendants have infringed upon claims 1–4, 6, 7, 9, and 10 of the '475 Patent. Claim 1 of the '475 invention states that the invention claimed is:

1. A method of:

> providing an image to be viewed, whereby said image has first, second and third orthogonal directions;

reconfiguring said image to a planar image whereby said first orthogonal direction and said second orthogonal direction form an angle of 90 degrees minus a first pre-determined non-zero angle and whereby said second orthogonal direction and said third orthogonal direction form an angle of 90 degrees plus a second predetermined non-zero angle;

placing said reconfigured planar image at a given angle with respect to a viewer whereby said image appears to the viewer to protrude from said reconfigured planar image and have said first, second and third orthogonal directions; and

wherein the first and second orthogonal directions form a plane different from the plane of said planar image; and wherein said image comprises a primary figurative element and a second figurative element, wherein said secondary figurative element depicts a third dimension of said image.

*Id.* Each of the remaining nine claims depends upon the method set forth in claim 1. *Id.*

## 2. The Infringing Conduct

In April 2015, Plaintiff submitted its unsuccessful bid to Defendant, Traffic Sports USA, Inc. ("Traffic Sports") to supply its patented 3D CamCarpets for use in the 2015 Gold Cup tournament games. D.E. 1

¶ 16. Traffic Sports, as the holder of the media and marketing rights to the 2015 Gold Cup tournament of the Confederation of North, Central American, and Caribbean Association Football ("CONCACAF"), awarded Defendant, 3D Sports Signs SI ("3D Sports"), with a contract to supply the advertising carpets to various CONCACAF games. *Id.* ¶ 18. Plaintiff alleges that Defendants, Carsen Jensen Charmig ("Charmig"), Xavier Palmerola Fernandez ("Fernandez"), and Jose Isabal Roca ("Roca") (collectively, the "Individual Defendants"), authorized and participated in the activities of 3D Sport Signs with respect to supplying the 3D advertising carpets to Traffic USA for use at the sporting events. *Id.* ¶ 19.

## 3. 3D Sport Signs' Method of Creating its Products

3D Sport Signs' method to create its carpets begins with a two-dimensional image. *See* D.E. 125–15, de los Aires Dep. at 50, 51, 52, 58–59, 94; D.E. 125–16; D.E. 125–18, Defendants' Supplemental Answers to Plaintiff's Second Set of Interrogatories at Answers 1–3; D.E. 125–17, U.S. Patent No. 9,041,715 B2 ("Patent 715 B2"). The beginning two-dimensional image is a logo that is supplied by 3D Sports Signs' client, which is then cropped by 3D Sports Signs to eliminate excess space in the logo. The process appears as follows:

 

D.E. 125–15 at 50–52, 58–59, 94, 106; D.E. 125–18, Defs.'s Supp. Answers to Pltf.'s Second Set of Interrog. at No 1–3; D.E. 125–17.

3D Sports Signs then uses the standard Adobe Illustrator program to transform the two-dimensional image into another two-dimensional image as follows:

D.E. 125–15 at 24–25, 55, 58–61. 125–18, Defs.'s Supp. Answers to Pltf.'s Second Set of Interrog. at No. 1–3; D.E. 125–17.

After the transformation, 3D Sports Signs uses Adobe Illustrator to draw a

border around certain portions of the logo. D.E. 125–15 at 24–25, 55; D.E. 125–18, Defs.'s Supp. Answers to Pltf.'s Second Set of Interrog. at No. 1–3; D.E. 125–17.

#### 4. 3D Sport Signs' 3D Mock–Up

It is undisputed that Defendants created a "3D Mock–Up" which its client, Scotiabank, approved before any carpets were manufactured or created for the 2015 CONCACAF Gold Cup Tournament. D.E. 143–1; D.E. 143–7, Pooley Dep. 88:19–89:8.

The image is a simulation of the end result of 3D Sports Signs' process described above that 3D Sports Signs uses to market its products. D.E. 124–3, de los Aires Dep. at 58–59; D.E. 124–2, Fidelman Dep. at 124. The 3D Mock–Up that was provided to Scotiabank appears as follows:

#### PROCEDURAL HISTORY

On August 27, 2015, Plaintiff filed its Complaint for Patent Infringement in the United States District Court for the Eastern District of Pennsylvania, asserting the following claims: (1) Direct Infringement of the '475 Patent against 3D Sport Signs; (2) Inducement of Infringement of the '475 Patent against all Defendants; and (3) Contributory Infringement of the '475 Pat-

ent against all Defendants.[1] D.E. 1. On October 26, 2015, Defendants, 3D Sport Signs SL, Xavier Palmerola Fernandez, Jose Isabal Roca, and Traffic Sports USA, Inc., filed their Answer and Affirmative Defenses and also asserted a Counterclaim against Plaintiff for a Declaratory Judgment of Non–Infringement. D.E. 17. On November 16, 2016, Plaintiff filed its Answer to Defendants' Counterclaims. D.E.

---

1. Specifically, Plaintiff has asserted that Defendants infringed claims 1–4, 6, 7, 9, and 10

of the '475 Patent. D.E. 1 at 22–23.

25. Defendant, Carsten Jensten Charmig, filed his Answer to Plaintiff's Complaint on March 22, 2016. D.E. 48.

On October 21, 2016, Defendants filed their Motion to Transfer to the Southern District of Florida Pursuant to 28 U.S.C. § 1404(a). D.E. 13. In their Motion, Defendants argued that none of the parties had any meaningful connection with Pennsylvania, and the case should be transferred to Florida because Defendants' employees, books, and records were more conveniently located in Miami. D.E. 13–1. On February 18, 2016, the Court granted Defendants' Motion and transferred the case to the Southern District of Florida. D.E. 30.

Once the case was transferred to the Southern District of Florida, the parties agreed to the definitions for some claim elements of the '475 Patent, and moved to modify the Scheduling Order on the grounds that claim construction and a *Markman* hearing were unnecessary. D.E. 62, 63. This Court agreed with the parties that a *Markman* hearing was no longer necessary based upon the Joint Claim Construction Chart filed with the Court. D.E. 65.

As stated above, claim 1 of the '475 Patent states, in relevant part, that the invention claims a method of: "providing an image to be viewed, whereby said image has first, second, and third orthogonal directions"; and "reconfiguring said image to a planar image[.]" D.E. 1, Ex. A. Using the interpretation set forth by the parties in their Joint Claim Construction Chart, these claim elements become: "starting with a three-dimensional image to be viewed, whereby said image has the x, y and z axis in a three-dimensional space at right angles (90°) to each other"; and "taking the three-dimensional image and reconfiguring it into a two-dimensional image[.]" D.E. 63 at 1–2. Thus, it is undisputed that the method of the '475 Patent requires that the process begin with a three-dimensional image in a three-dimensional space with orthogonal directions, and then that said image is then reconfigured into a two-dimensional image by altering the angle of the axes. D.E. 1–1; D.E. 63.

On September 9, 2016, Plaintiff moved for summary judgment as a matter of law as to Defendants' affirmative defenses of anticipation under 35 U.S.C. § 103 and obviousness under 35 U.S.C. § 103. D.E. 121. On the same day, Defendants, 3D Sport Signs SL, Xavier Palmerola Fernandez, Jose Isabal Roca, and Traffic Sports USA, Inc., moved for summary judgment as to each of the claims in Plaintiff's Complaint. D.E. 124. Defendant, Carsten Jensten Charmig, also separately filed his Motion for Summary Judgment as to each claim against him on the grounds that Plaintiff cannot establish sufficient evidence to support individual liability for patent infringement. D.E. 126. The Motions are fully briefed and are ripe for this Court's consideration.

## LEGAL STANDARD

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. When determining whether the moving party has met this burden, the Court must view the evidence and all factual inferences in the light most favorable to the non-moving party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Rojas v. Florida*, 285 F.3d 1339, 1341–42 (11th Cir. 2002).

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of proving that no genuine issue of material fact exists, the non-moving party must make a showing sufficient to establish the existence of an essential element of that party's case and on which that party will bear the burden of proof at trial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997); *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989).

 If the record presents factual issues, the Court must not decide them; it must deny the motion and proceed to trial. *Envntl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment. *Impossible Elec. Techs., Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he dispute about a material fact is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.")

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. The moving party must demonstrate that the facts underlying the relevant legal questions raised by the pleadings or are not otherwise in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611–12 (5th Cir. 1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the nonmoving party. *Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. 2505.

## ANALYSIS

In their Motion for Summary Judgment, Defendants move for summary judgment as to each of the claims within Plaintiff's Complaint on the following grounds: (1) Defendants' products do not infringe Plaintiff's products because a material element of the '475 Patent claim is not used by Defendants; and (2) the '475 Patent is invalid because Plaintiff claims a method that is not patentable subject matter. Because the Court finds no reasonable jury could find Defendants' products literally infringed upon Plaintiff's products, the Court will only address Defendants' first argument.[2]

### 1. Patent Infringement Standard

 A patent is infringed when a person "without authority makes, uses, offers to sell, or sells any patented invention within the United States ... during the term of the patent." 35 U.S.C. § 271(a). When filing suit for patent infringement, it is the patentee's burden to prove infringement by a preponderance of the evidence. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991). "If the paten-

---

**2.** Defendant, Carsten Charmig ("Charmig"), separately filed his Motion for Summary Judgment (D.E. 126) as to issues that are exclusive to him; however, in a footnote, he adopted the arguments contained within Defendants' Motion for Summary Judgment.

tee fails to meet that burden, the patentee loses regardless of whether the accused comes forward with any evidence to the contrary." *Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1314 (Fed. Cir. 2011).

■ In a patent infringement case, "[i]t is well established that determining infringement is a two-step process." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996)). Claim construction is the first step in a non-infringement analysis. *See Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999). Here, there is no dispute as to the claim elements in this case. The parties reached an agreement as to the interpretations of the claims and *filed* a Joint Claim Construction Chart (D.E. 63) with the Court, which supplied the definitions for the claim elements. Therefore, the Court will only focus on the second step of the infringement analysis.

■ The second step is "comparing the properly construed claims to the device accused of infringing." *Markman*, 52 F.3d at 976. "Although the second step is a question of fact, 'it is amenable to summary judgment where, *inter alia*, no reasonable fact finder could find infringement.' " *Billingnetwork.com, Inc. v. Cerner Physician Practice, Inc.*, 509 F.Supp.2d 1172, 1177–78 (M.D. Fla. 2007) (citing *Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998)); *see also Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997) ("[w]here the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obli-

gated to grant partial or complete summary judgment.").

■ Under the "all elements" rule, the accused device must contain "each limitation of the claim, either literally or by an equivalent" to find infringement. *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1379 (Fed. Cir. 2008) (citing *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005) (citing *Warner–Jenkinson*, 520 U.S. at 29, 117 S.Ct. 1040)). In its Complaint and in responding to Defendants' arguments, Plaintiff has not argued the doctrine of equivalents; therefore, the Court will only focus on the literal infringement analysis. *See Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005) ("Having presented the district court with only conclusory statements regarding equivalence, without any particularized evidence and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device, or with respect to the 'function, way, result' test, [a party] is now foreclosed from invoking the substantive application of the doctrine of equivalents.").

■ "Literal infringement requires that the accused device embody every element of the claim." *Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.*, 757 F.2d 255, 257 (Fed. Cir. 1985). Thus, summary judgment is appropriate if there exists no genuine issue of material fact such that a reasonable fact finder could not find that *every* limitation in the claim is found in the accused device. *See PC Connector Solutions*, 406 F.3d at 1364; *see also Irdeto Access, Inc. v. Echostar Satelitte Corp.*, 383 F.3d 1295, 1299 (Fed. Cir. 2004); *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1350 (Fed. Cir. 1999) ("To prove literal infringement, the patentee must show that the accused device con-

tains every limitation in the asserted claims. If even one limitation is missing or not met as claimed, there is no literal infringement."). 0

### 2. The Parties' Arguments

Defendants argue that they are entitled to summary judgment as to each claim in Plaintiff's Complaint because Defendants' products do not literally infringe Plaintiff's products. Specifically, Defendants argue that each of Plaintiff's claims require that Plaintiff's method (1) begins with a three-dimensional image with orthogonal directions; and then (2) "said image" of (1) is reconfigured into a two-dimensional image by altering its angles. Defendants argue that their method begins with and reconfigures a two-dimensional image, which differs from the three-dimensional image that is required by claim 1 in the '475 Patent. Therefore, Defendants insist they are entitled to summary judgment as a matter of law as to claim 1 of the '475 Patent.[3]

In response, Plaintiff argues that there is a genuine issue of material fact as to whether Defendants' products infringe Plaintiff's '475 Patent because Defendants provide each client with a "3D Mock–Up" that "show[s] how [the client's] logo will appear on TV." According to Plaintiff, the three features of the "3D Mock–Up" are also found in Defendants' reconfigured two-dimensional image, which provides, at a minimum, disputed factual evidence that

Defendants reconfigure the "3D Mock–Up" into a two-dimensional image.

In their reply, Defendants argue that Plaintiff provides only theory and speculation that Defendants' products literally infringe Plaintiff's products. Defendants argue that there is no evidence the 3D Mock–Up is anything but a simulation of the end result of Defendants' process that is used to market their products. Further, Defendants argue that there is no evidence the 3D Mock–Up is reconfigured as a part of Defendants' process as required by the claims.

### 3. Application of the Patent Infringement Analysis

■ Claim 1 of the '475 Patent[4] states that the invention claimed is a method of:

providing an image to be viewed, whereby said image has first, second and third orthogonal directions;

reconfiguring said image to a planar image[.]

In applying the claim interpretation agreed to by the parties in the Joint Claim Construction Chart, the claim elements become:

starting with a three-dimensional image to be viewed, whereby said image has the x, y and z axis in a three-dimensional space at right angles (90°) to each other;

taking the three-dimensional image and reconfiguring it into a two-dimensional image[.]

---

**3.** Defendants also argue that because claims 2–3, 6, 7, 9, and 10 of the '475 are dependent on the main claim of the '475 Patent, and claim 1 has not been infringed upon, then the remaining claims can also not be infringed. The Court agrees with Defendants' argument and will focus on claim 1 for purposes of the infringement analysis. *See Wahpeton Canvas Co., Inc. v. Frontier, Inc.,* 870 F.2d 1546, 1553 (Fed. Cir. 1989) ("It is axiomatic that dependent claims cannot be found infringed unless

the claims from which they depend have been found to have been infringed.").

**4.** In moving for summary judgment, Defendants focus on very narrow language in claim 1 of the '475 Patent; therefore, the Court will only consider the pertinent language in claim 1 and the parties' interpretation as to this language provided for in their Joint Claim Construction Chart.

D.E. 63 at 1–2. Based upon the arguments raised by Defendants in their Motion for Summary Judgment, the focus of this Court's inquiry is two-fold: (1) whether Defendants' method begins with a three-dimensional image, as required by the claim elements of the '475 Patent, or with a two-dimensional image as argued by Defendants, and (2) whether said image is then reconfigured into a two-dimensional image, as required by the '475 Patent.

The Court finds it is undisputed that Defendants' method begins with a two-dimensional image, not a three-dimensional image as argued by Plaintiff. As an initial matter, it is undisputed by the parties that: (1) Defendants' client supplies Defendants with the initial two-dimensional logo image that is cropped by Defendants to trim excess bordering; (2) Defendants then use Adobe Illustrator to reconfigure that two-dimensional image by altering the orthogonal angles; and (3) after Defendants change the angles, it uses Adobe Illustrator to draw a border around certain portions of the two-dimensional image. In construing the claim definitions provided by the parties, the "image to be viewed" onto the carpets then is the two-dimensional image of the client's logo once it is cropped because that is the image that then becomes reconfigured.

Plaintiff argues that Defendants' "3D Mock–Up" is actually the three-dimensional image to be viewed, and not the client's logo as argued by Defendants, and the "3D Mock–Up" is the image that is then reconfigured onto a carpet into a two-dimensional image. In support of its posi-

tion, Plaintiff relies upon the fact that the reconfigured two-dimensional image resulting from Defendants' method contains the same features that are found in the "3D Mock–Up," including: (1) the front face portion containing the Scotiabank logo and name, (2) a darker red border portion which shows depth, and (3) a black triangle feature in the right-most bottom part of the sign depicting a shadow.

The Court is not persuaded by Plaintiff's argument. There is no record evidence that the 3D Mock–Up is anything other than a simulation of the end result of Defendants' process that is used by Defendants to market their products, not the starting three-dimensional image that is subsequently reconfigured. Plaintiff crafts conclusory arguments that because the 3D Mock–Up looks similar to Defendants' reconfigured two-dimensional image, the 3D Mock–Up must be "the three-dimensional image to be viewed" for purposes of this infringement analysis. However, that is not the appropriate analysis before the Court, and the visual similarities between two products are not relevant. Before Plaintiff can prevail on its literal infringement claim, it is required to prove by competent evidence that every limitation recited in its claim is found in Defendants' products. *Cole v. Kimberly–Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996). However, Plaintiff has failed to point to anything in the record to indicate that the 3D Mock–Up is the initial "three-dimensional" image other than its own unsubstantiated arguments.[5]

 Even if this Court were to agree with Plaintiff that the 3D Mock–Up is the

---

5. With respect to Plaintiff's cite of its expert witness, Wayne Fidelman, in support of its position that Defendants' method begins with a three-dimensional image, the Court also rejects Plaintiff's characterization of his testimony. In reviewing Mr. Fidelman's deposition, Mr. Fidelman actually admits that

Defendants alter the initial two-dimensional logo that is provided by Defendants' client. *See* Dep. Fidelman 105:2–5 ("They alter the image that's provided by a client. They get that image, they mock it up, and then they put it on a planar carpet.").

initial "three-dimensional"[6] image to be viewed, Plaintiff has also failed to present any evidence as to how the 3D Mock–Up is then reconfigured into a two-dimensional image. The '475 Patent clearly refers to a specific three-dimensional image, and that this specific three-dimensional image must have its angles reconfigured as provided for in the second clause of claim 1. However, Plaintiff's analysis does not address how that specific 3D Mock–Up image is reconfigured into a two-dimensional image. Plaintiff simply argues that "Defendants 'manipulate' the '3D Mock–Up' by taking the three distinct features thereof . . . and altering them to achieve a two-dimensional version of the '3D Mock–Up' that will be seen by the television audience as having three dimensions." D.E. 143 at 10. Without any record evidence to substantiate such a position, the Court cannot find a genuine dispute as to this material fact exists. It follows that because each of the remaining claims depend upon the existence of claim 1, Plaintiff has failed to meet its burden as to each of the allegedly infringing claims.

Because the Court agrees with Defendants that Plaintiff has failed to meet its burden in establishing that Defendants' products literally infringed upon Plaintiff's products, Defendants are entitled to summary judgment as a matter of law. It is hereby

ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment (D.E. 124) is GRANTED. It is further

ORDERED AND ADJUDGED that Defendant, Carsten Charmig's Motion for Summary Judgment (D.E. 126 and 127) is GRANTED.

**6.** Had Defendants pressed the argument that the 3D Mock–Up is merely a two-dimensional image that "appears three-dimensional," the Court would likely have agreed that based upon the distinction in claim 1 of the '475

DONE AND ORDERED in Chambers at Miami, Florida, this 22 day of November, 2016.

Patent between an actual "three dimensional image with orthogonal directions" in "three-dimensional space" and an "image that appears three dimensional."